### BEDFORD.

Where an election took place on the second Monday of November, and the member elect declined the office, and notified the selectmen thereof, it was held, that a second meeting for the choice of a representative had thereby become necessary, and might be lawfully held on the fourth Monday.

It seems, that where a second meeting for the choice of a representative becomes necessary, the neglect of the selectmen to state from what cause that necessity has arisen, does not affect the validity of an election made at such meeting.

THE validity of the election of Amos Hartwell, returned a member from this town, was controverted by Jonathan P. Bacon and others, and referred to the committee on elections, who made thereon the following report: —

" That the said petition represents 'that said town was legally convened on the 14th day of November, last past, for the choice of a representative to represent said town at this present session of the general court, and did then and there make choice of the Rev. Joshua Chandler, and declaration was made thereof in open meeting, and a committee of five persons was elected to wait on said Chandler, to solicit an answer whether he would accept of said office; the committee performed their duty, and returned in open meeting, and gave

[1] 59 J. H. 74, 83.

said Chandler's answer in the affirmative, which was so re-
corded by the clerk; after which said meeting was dissolved,
without further action on the subject.'

The said petitioners further allege, 'that the said Hartwell,
the sitting member, is chairman of the board of selectmen in
said town, and that the selectmen did neglect to do their duty,
as pointed out in the Rev. Stat. c. 5, § 8, and did utterly re-
fuse, though often requested, to comply with the provision of
said section; and that said sitting member did issue a warrant,
signed by himself and one other of said board, to one of the
constables of said town, calling another meeting on the 28th
of said November, for some cause not set forth in said warrant,
or notice, to choose a representative to represent said town in
the said next general court; at which meeting said sitting
member was elected by a part of the voters present.'   The
petitioners conclude, by praying that they may be heard in the
premises, and that the house would render judgment as to the
legality of the whole proceedings.

An order of notice to the petitioners having been passed,[1]
they, the sitting member and their counsel, appeared before
and were fully heard by the committee.

It appeared, that the warrant for the meeting on the 14th of
November was signed by all the selectmen, was dated the
31st of October, and among other articles therein was the fol-
lowing:—' Article 5th.   To give in their votes for a repre-
sentative to represent this town in the next general court, to
be holden in the city of Boston, on the first Wednesday of
January next.'

Cyrus Page, constable of Bedford, returns on said warrant,
on the 12th of November, that he had served the same by
posting notice on each of the public meeting-houses in Bed-
ford, seven days before the date of his return.

It appeared from the records of the town, that the inhabi-
tants thereof met, pursuant to said warrant and notice, on the
14th of November, 1836, and acted on the 5th article in the
warrant, in the following manner, to wit, "their votes were

[1] 59 J. H. 74.

brought in to the selectmen for a representative, which, being sorted and counted, and declaration thereof made, as by law is directed, were as follows:—For Joshua Chandler, seventy votes; for Amos Hartwell, thirty-eight votes; for John Bacon, ten votes; for William Page, one vote; For Cyrus Page, one vote. Said Joshua Chandler was declared to be elected. A committee was appointed, namely, William Page, John Merriam, Jonathan Bacon, George Fiske, and John W. Hayward, to wait on Mr. Chandler, and inform him of his election as a representative, and obtain his answer.

The committee reported by their chairman that Mr. Chandler had signified his acceptance of said office.'

A statement, signed by 'John Bacon, constable of the town of Bedford,' dated the 3d day of January last, after reciting the election of said Chandler on the 14th of November last, concludes thus: 'the person chosen as aforesaid has been notified thereof, and summoned to attend, by me, John Bacon, constable of the town of Bedford.'

It does not appear that the selectmen, after the election of said Chandler, gave notice to him of his election as required by the Rev. Sts. c. 5, § 8.

A written communication, addressed to Amos Hartwell, signed by 'Reuben Bacon, T. Clerk,' and dated Nov. 16th, was admitted by agreement of parties, and is as follows:—

'SIR,—Rev. Mr. Chandler notified me last evening, that, upon mature consideration, he must be permitted to decline the honor of serving this town as a representative to the general court, and desired that I should give timely notice to the selectmen of his conclusion, in order that they may, if they think proper, notify another meeting to be holden on the fourth Monday of this month, to choose a representative, agreeably to the 10th article of the amendments to the constitution.'

On the 16th of November, 1836, a warrant was issued by Amos Hartwell and John P. Reed, two of the selectmen of Bedford, directed to either of the constables of said town, requiring him to notify and warn the male inhabitants of said Bedford, qualified as the constitution and laws require, to vote

for representatives to the general court, (by posting a copy of this warrant in each of the meeting-houses in said Bedford) to meet at the town hall, in said town, on Monday the 28th day of November instant, at two o'clock, P. M., to give in their votes for a representative to represent this town in the general court next to be holden in the city of Boston, on the first Wednesday of January next.

On the 18th of said November, ' Cyrus Page, constable of Bedford,' made return thereon that he had served the same by posting a notice on each of the public meeting-houses in Bedford.

The records of said town show, that, ' pursuant to the foregoing warrant and notice, the inhabitants of Bedford assembled in town-meeting on the 28th of November, 1836, and acted on the article therein contained in the following manner, viz:—

' The inhabitants brought in their votes to the selectmen for a representative: the whole number of ballots was one hundred and five; necessary to a choice, fifty-five; Amos Hartwell has sixty-four, and is chosen: declaration of the same having been made, the meeting was dissolved.'

A certificate of the election, on the 28th of November, of said Hartwell, was returned in the usual form, signed by John P. Reed and Liab Lee, selectmen of the town of Bedford; and Cyrus Page, constable of Bedford, states thereon, that the person chosen as aforesaid was notified thereof, and summoned by him to attend. The certificate bears date Nov. 28th, 1836.

It was contended by the sitting member, that the proceedings at the meeting on the 14th, as to the election of representative, were void, and that there was then no election contemplated by law; the said Joshua Chandler not being eligible, he not having the requisite residence in that town. On this point, a majority of the committee were of opinion, that the testimony introduced showed that said Chandler was ' an inhabitant of Bedford for one year next preceding his election.'

It was also contended by the sitting member, that if said Chandler had the requisite qualification as to inhabitancy,—it

being admitted that he had notified the town clerk, on the 15th day of November, that he could not serve as representative—it was competent for the town to elect on the fourth Monday, and that a 'necessity' for a second meeting existed in consequence of such notice.

It was contended by the petitioners, that the town of Bedford, by the election on the second Monday of a representative duly qualified, who accepted that office, and by the dissolution of the meeting without adjournment, had exercised and exhausted all the power which the constitution and laws conferred; and that it was not competent for the person thus elected, and accepting, to resign to the town; but that he should have resigned to the house of representatives; or the town should have applied to the house for authority to make a second election.

It was further contended by the petitioners, that the warrant and notice for the second meeting were unsatisfactory and insufficient, inasmuch as they did not assign the refusal to serve by said Chandler as a reason or cause for a second election, and the qualified voters of said town knowing that an election had been made, and not knowing that the person elected had declined to accept the trust, may well have supposed that no necessity for a second meeting existed, and in consequence thereof omitted to attend the second meeting.

The committee believe, that the facts present a case of novel character, and one which has not been decided by the action of the house as reported in the volume of election cases. They think that cases of similar character may frequently occur; that it is important that the question should be settled; and therefore they have reported the facts in the case.

On a review of these facts, a majority of the committee are of opinion, that the election, by Bedford, on the 4th Monday of November, was not warranted by the constitution and laws of this commonwealth, and they so report for the action and supervision of the house thereon."

A minority of the committee (Messrs. *Park*, *Mansur*, and

*Hinckley,*) dissenting from the conclusion of the report, submitted their views to the house, as follows :—

" A minority of the committee on elections beg leave respectfully to submit to the house of representatives some of the views and reasons which lead them, with all due deference, to dissent from the report of the majority, in the case of the election in the town of Bedford. They do this the more readily, from a belief that the case presents a new question, one never yet settled; and one upon which it is important that an unequivocal decision should be made.

The facts of the case being correctly detailed in the report of the majority, it is needless to repeat them; but from these facts, the minority have felt themselves compelled to draw the inference, that the sitting member is entitled to his seat.

It is admitted, on all hands, that the meeting of the 14th of November was legally notified and held; that the Rev. Joshua Chandler was elected, notified, and accepted. There may be doubts in the minds of some persons whether that gentleman was eligible, but upon this point the minority express no definite opinion, it having no influence or bearing upon the view of the case taken by them. At this point, the majority stop, and allege that the town, as such, was *functus officio,* that it had completed all, that by the constitution and laws it could do, and that notwithstanding the letter of Mr. Chandler on the 16th, declining to stand; the warrant thereon issued on that day; the return of publishment endorsed thereon on the 18th, and the subsequent formal and legal doings of the 28th; still, that unless Mr. Chandler appears, the town must remain unrepresented, and virtually disfranchised, without wrong act or fault on their part.

The minority place their dissent, first, upon this general, republican, just, and equitable principle, that in a representative community, every town, which wishes and votes to be represented, should have a full and fair opportunity to elect and send a representative.

For this purpose, and to the furtherance of this end, the constitution of the state, in the tenth article of amendment,

reads as follows: 'The meeting for the choice of governor, lieutenant-governor, senators and representatives, shall be held on the second Monday of November, in every year; but meetings may be adjourned, if necessary, for the choice of representatives, to the next day, and again to the next succeeding day, but no further. But in case a second meeting shall be necessary, for the choice of representatives, such meetings shall be held on the fourth Monday of the same month of November.'

Now what can be the necessity which the constitution contemplates might arise? Among other supposable cases, the most glaring and obvious is the contingency, that a town should vote to send a representative, then elect an individual, who, not being present, or for some other reason, should not immediately answer, but should on the next day or two decline. It becomes then 'necessary' that a new meeting should be held, for the purpose of carrying into effect the first vote of the town, which was, that it should be represented.

Secondly. The minority are strengthened in this position by a reference to the Revised Statutes. In the 5th chapter, section eight, it is provided, that 'the selectmen, within three days after such election, shall, either by a constable of the town, or by some other person thereto specially authorized by them, give notice of the choice to the representatives elected.'

Why is it ordered that they shall be notified within three days? Was it not for the purpose of obtaining an early answer from the member elect; so that, if he declined within the three days, ten or twelve days notice might be given for a meeting on the fourth Monday, pursuant to the constitution, and the necessity therein foreseen? If this were not the reason of the three days' limitation, any time of notice would have sufficed, before the first Wednesday of January, provided time was allowed to the gentlemen elected to prepare themselves to leave home, and reach the seat of government.

It may be urged, that the necessity contemplated in the constitution was the possibility of there being no choice on the second Monday and the two succeeding days; but the minor-

ity ask, if provision for this purpose was the object, why was it not provided that the meetings should continue to be daily held until a choice is effected ? Why postpone the second meeting ten or twelve days by a constitutional provision, unless to give opportunity to receive declensions and then proceed to a new choice ?

It may be urged, that the constitution has made no similar provision for the case of a person elected on the fourth Monday, and declining to accept the office. But it must also be observed, that the same constitution makes no provision for adjournments *de die in diem*, on the fourth Monday as it does on the second ; showing that although the framers of that instrument intended to give towns a fair opportunity to carry out their original intentions of being represented, still that they thought two trials sufficient.

Thirdly. The minority are still further strengthened in their opinion and construction of the constitution and laws, by the cases of East Bridgewater and Gill, both decided in 1832, which are considered somewhat in point, to show what has been legislative construction of the word ' necessity.' In both cases, the towns voted to be represented. In both they voted, at the close of unsuccessful ballotings, not to send. Yet new meetings being called on the fourth Monday, and members elected pursuant to the original votes of the town, it was held, that such meetings were necessary, and the members entitled to their seats.

To apply, then, these principles and views to the facts of the case of the town of Bedford. The minority beg leave to point out that the declension of the member elected on the fourteenth (2d Monday) was received by the selectmen within the three days ; that a new warrant was promptly issued on the 16th,—in fact, before the three days had expired. This warrant was posted on the meeting-houses, and a return of that fact made on the 18th. Two Sundays intervened between that date and the 28th (4th Monday). The whole number of votes at the second meeting was but fifteen less

than at the first meeting, and a certificate is presented by the member elected at the second meeting.

It is finally to be observed, that the Rev. Joshua Chandler, the person elected at the first meeting, has not appeared to claim his seat; nay, more, he does not sign the petition against the sitting member.

The minority respectfully submit the above suggestions as the reasons why they shall vote in favor of the sitting member from Bedford."

This report, (the committee's,) after having been discussed on two several days, was indefinitely postponed, by a vote of 252 to 89. The motion for postponement was first made by Mr. Winthrop, of Boston, but being withdrawn by him, was renewed by Mr. Webster, of Haverhill.[1]

[1] 59 J. H. 277, 281.